1

2

3

4

5

6

7

8

9                        UNITED STATES DISTRICT COURT

10                       EASTERN DISTRICT OF CALIFORNIA

11

12    S.L.,[1]

13                    Petitioner,                     No. 1:26-cv-00522-TLN-EFB

14

15          v.                                        **ORDER**

16    MINGA WOFFORD, et al.,

17                    Respondents.

18

19          This matter is before the Court on Petitioner S.L.'s ("Petitioner") Motion for Temporary

20    Restraining Order ("TRO").  (ECF No. 2.)  For the reasons set forth below, Petitioner's motion is

21    GRANTED and Respondents are ORDERED TO SHOW CAUSE why the Petition for Writ of

22    Habeas Corpus (ECF No. 1) should not be granted.

23    ///

24    ///

25    ///

26    ///

27

28    [1]      The Court GRANTS Petitioner's Motion to Proceed Under a Pseudonym.  (ECF No. 3.)

1

## I.    FACTUAL BACKGROUND[2]

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 2.)  Petitioner is a citizen and national of China who entered the United States on January 17, 2025, through the San Ysidro Port of Entry, where he presented himself to immigration authorities to seek asylum with his wife and children.  (*Id.* at 9.)  Petitioner was briefly detained for approximately one day before being released from U.S. Department of Homeland Security ("DHS") custody.  (*Id.*)  On January 18, 2025, DHS released Petitioner and his family without requiring the posting of a bond and issued him a Notice to Appear, instructing him to report to the ICE office in San Francisco.  (*Id.* at 9–10.)

Following Petitioner's release, he established residence in Milpitas, California, where he lived with his wife (who was pregnant at the time) and their young daughter.  (*Id.* at 10.)  Since Petitioner's detention, his wife has given birth to their son, who is less than one month old.  (*Id.*)  Petitioner has never been arrested or charged with any criminal offense in the United States, aside from a single traffic citation that he promptly resolved.  (*Id.*)

Petitioner complied with all reporting obligations imposed by DHS and U.S. Immigration and Customs Enforcement ("ICE"), including participation in the Intensive Supervision Appearance Program ("ISAP").  (*Id.*)  Petitioner appeared multiple times at the San Francisco ICE office and subsequently enrolled in ISAP, which require him to install a monitoring application on his phone, submit weekly photographs, answer phone calls from ISAP officers, and appear in person at ISAP and ICE offices as scheduled.  (*Id.*)  To the best of his understanding, Petitioner remained in compliance with the program.  (*Id.*)  Although he was late on a few occasions, he communicated directly with his assigned officer about those instances, and at no time was he informed he was out of compliance or at risk of arrest.  (*Id.*)

On September 22, 2025, Petitioner appeared for a scheduled appointment at an ICE office, consistent with his intention to comply fully with all immigration requirements.  (*Id.*)  During that appointment, ICE officers informed him, for the first time, that he was allegedly not in

---

[2]    The instant factual background is taken largely verbatim from Petitioner's brief in support of his motion for TRO.  (ECF No. 2.)

1   compliance with his phone check-ins.  (*Id.*)  This was a complete surprise to Petitioner, as he had

2   never received any formal warning, notice of violation, or threat of arrest from ISAP or ICE

3   officials prior to that date.  (*Id.*)  Petitioner was arrested that same day and transferred into ICE

4   custody.  (*Id.*)

5       On September 22, 2025, Petitioner was transported to the Mesa Verde Detention Facility,

6   where he remains detained.  (*Id.*)  As a result of his detention, Petitioner is unable to care for or

7   financially support his wife, newborn son, and young daughter, who are now without income.

8   (*Id.*)  Petitioner reports the conditions at the facility are cold and restrictive, he has difficulty

9   sleeping, and the food has negatively affected his health.  (*Id.* at 10–11.)

10      Since his detention, Petitioner has experienced significant emotional distress, including

11  sadness, depression, anxiety, and constant worry about his family and the outcome of his asylum

12  case.  (*Id.* at 11.)  Petitioner fears return to China, where he and his family experienced

13  persecution.  (*Id.*)  Petitioner affirms he intends to continue complying with all immigration

14  requirements and to pursue his asylum claim.  (*Id.*)  Petitioner now challenges the lawfulness of

15  his civil detention and seeks release. (*See* ECF Nos. 1, 2.)

16      **II.    STANDARD OF LAW**

17      For a TRO, courts consider whether a petitioner has established "[1] that he is likely to

18  succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

19  relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

20  interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a

21  showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

22  1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh

23  petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger

24  showing on the balance of the hardships may support issuing a TRO even where the petitioner

25  shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows

26  that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*

27  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were

28  raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to

3

1  succeed in a request for a TRO.  *Id.* at 1134–35.

2      **III.   ANALYSIS**[3]

3          A.      Likelihood of Success on the Merits

4      Petitioner argues his detention violates both his substantive due process and procedural

5  due process rights guaranteed by the Fifth Amendment Due Process Clause.  (ECF No. 2 at 12–

6  24.)  The Court discusses each claim in turn.

7                  *i.      Violation of Substantive Due Process*

8      The Fifth Amendment Due Process Clause provides that no person shall "be deprived of

9  life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  "The Due Process

10  Clause applies to all 'persons' within the United States . . . whether their presence here is lawful,

11  unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom

12  from imprisonment — from government custody, detention, or other forms of physical restraint

13  — lies at the heart of the liberty that Clause protects."  *Id.* at 690.  However, "in certain special

14  and narrow nonpunitive circumstances," nonpunitive government detention does not violate the

15  Clause "where a special justification . . . outweighs the individual's constitutionally protected

16  interest in avoiding physical restraint."  *Id.* (cleaned up) (quoting *Kansas v. Hendricks*, 521 U.S.

17  346, 356 (1997)).  "In the context of civil immigration detention, the two 'regulatory goals' of the

18  Immigration and Nationality Act ["INA"] provisions governing such detention — 'ensuring the

19  appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the

20  community' — can provide such 'special justification.'"  *Valencia Zapata v. Kaiser*, 801 F. Supp.

21  3d 919, 939 (N.D. Cal. 2025) (citing *Zadvydas*, 533 U.S. at 690; *Pinchi v. Noem*, 792 F. Supp. 3d

22  1025, 1035 (N.D. Cal. 2025)).  "[T]he government has no legitimate interest in detaining

23  individuals who have been determined not to be a danger to the community and whose

24  _____

3      The Court finds Petitioner has sufficiently met the requirements for issuing a TRO without
25  notice.  *See* Fed. R. Civ. P. 65(b).  Petitioner's counsel filed a TRO checklist, which states that
   she emailed the U.S. Attorney's Office email address for immigration cases to provide notice.
26  (ECF No. 2-7 at 1.)  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO (HC), 2025 WL
   2617255, at *3 (E.D. Cal. Sept. 9, 2025) (similarly finding requirements for TRO were met
27  without notice); *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal.
   July 4, 2025) (same).

28

1  appearance at future immigration proceedings can be reasonably ensured by a lesser bond or

2  alternative conditions." *Id.* (quoting *Hernandez v. Sessions*, 872 F.3d 976, 990, 994 (2017)).

3  Here, Petitioner argues his detention is not justified by a legitimate purpose, as he is

4  neither a danger nor a flight risk, which is evidenced by Respondents previously releasing him

5  from custody in January 2025. (ECF No. 2 at 13.)  The Court finds Petitioner's arguments

6  persuasive.  With respect to whether Petitioner is a danger to the community, Petitioner states he

7  has no criminal history and has had no intervening criminal history or arrests since his release.

8  (*Id.* at 13–14.)  With respect to whether Petitioner is a flight risk, Petitioner asserts he has

9  promptly communicated with his officer, ICE, and ISAP appointment.  (*Id.* at 14.)  Petitioner

10 notes he was arrested while actively appearing at his scheduled ICE appointment.  (*Id.*)  The

11 Court further finds persuasive Petitioner's argument that there is further mitigation of flight risk

12 because he has a viable path toward immigration relief through his asylum and withholding of

13 removal applications.  (*Id.*); *cf. Padilla v. U.S. Immigr. and Customs Enf't*, 704 F. Supp. 3d 1163,

14 1173 (W.D. Wash. 2023) (finding there is no public safety concern or flight risk for plaintiffs

15 with "bona fide asylum claims and who desire to remain in the United States").  In light of the

16 foregoing, the Court finds — at the very minimum — Petitioner raises serious questions on the

17 merits of his substantive due process claim.

18            ii.    *Violation of Procedural Due Process*

19 Petitioner has established a likelihood of success on his claim that his detention violates

20 his procedural due process rights.  (ECF No. 2 at 14–24.)  The Fifth Amendment prohibits

21 government deprivation of an individual's life, liberty, or property without due process of law.

22 U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due

23 Process Clause applies to all "persons" within the borders of the United States, regardless of

24 immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights

25 extend to immigration proceedings and detention.  *Id.* at 693–94.

26 Courts examine procedural due process claims in two steps: the first asks whether there

27 exists a protected liberty interest under the Due Process Clause, and the second examines the

28 procedures necessary to ensure any deprivation of that protected liberty interest accords with the

1  Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

2  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies,

3  the question remains what process is due.").

4  *a)*      *Liberty Interest*

5  As for the first step, the Court finds Petitioner has established a protectable liberty

6  interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D.

7  Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by

8  statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he

9  government's decision to release an individual from custody creates 'an implicit promise,' upon

10  which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to

11  the . . . conditions [of release]."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,

12  2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a

13  noncitizen released from custody pending removal proceedings has a protected liberty interest in

14  remaining out of custody."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL

15  2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional

16  release rises to the level of a protected liberty interest, courts have "compar[ed] the specific

17  conditional release in the case before them with the liberty interest in parole as characterized by

18  *Morrissey*."  *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D.

19  Cal. Sept 9, 2025).

20  Here, the Court agrees with Petitioner that he gained a liberty interest in his continued

21  freedom after DHS released him on parole in January 2025.  (ECF No. 2 at 17.)  Under *Morrisey*,

22  this release implied a promise that he would not be re-detained, during the pendency of his

23  immigration proceedings, if he abided by the terms of his release.  Petitioner asserts he has

24  complied with all reporting obligations imposed by DHS and ICE, including participation in

25  ISAP.  (*Id.* at 10.)  As this Court has found previously, along with many other courts in this

26  district when confronted with similar circumstances, Petitioner has a clear interest in his

27  continued freedom as he awaits the outcome of his asylum proceedings.  *See, e.g.*, *Doe v.

28  Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in

1  allowing petitioner to remain in the community for over five years strengthened petitioner's

2  liberty interest).

3                          *b)        Procedures Required*

4         As to the second step — what procedures or process is due — the Court considers three

5  factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an

6  erroneous deprivation of such interest through the procedures used, and the probable value, if any,

7  of additional or substitute procedural safeguards;" and (3) "the Government's interest, including

8  the function involved and the fiscal and administrative burdens that the additional or substitute

9  procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  As set

10 forth below, the Court finds Petitioner has established his due process rights were likely violated.

11        First, Petitioner has a substantial private interest in remaining free from detention.

12 "Freedom from imprisonment — from government custody, detention, or other forms of physical

13 restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S.

14 at 690.  Petitioner asserts that what is at stake for him is "one of the most profound individual

15 interests recognized by our legal system: whether ICE may unilaterally nullify a prior decision

16 releasing a non-citizen from custody and be able to take away his physical freedom, i.e., his

17 'constitutionally protected interest in avoiding physical restraint.'"  (ECF No. 2 at 20 (quoting

18 *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).)  Accordingly, this factor weighs in favor

19 of finding Petitioner's private interest has been impacted by his detention.  *See Manzanarez v.*

20 *Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025)

21 (finding similarly).

22        Second, the risk of erroneous deprivation is considerable given Petitioner has not received

23 any hearing, either pre- or post-detention.  Petitioner asserts he did not receive notice or a hearing

24 before a neutral decisionmaker prior to his re-detention.  (ECF No. 2 at 10, 21, 23–24); *see also*

25 *Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO,

26 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of

27 liberty] is high" when "[the petitioner] has not received any bond or custody redetermination

28 hearing.")).  Thus, the Court finds there is a serious likelihood Petitioner was likely erroneously

7

1   deprived of his liberty interest.  Without any procedural safeguards to determine whether his

2   detention was justifiable, the probative value of additional procedural safeguards is high.

3   *R.D.T.M.*, 2025 WL 2617255, at *4.

4        Finally, the Government's interest is low, and the effort and cost required to provide

5   Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-

6   TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent

7   under a final order of removal, "[t]he government has no legitimate interest in detaining

8   individuals who have been determined not to be a danger to the community and whose

9   appearance at future immigration proceedings can be reasonably ensured by [ ] bond or

10  alternative conditions."  *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4

11  ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a

12  noncitizen presents a risk of flight or danger to the community." (cleaned up)).

13       Here, Petitioner asserts the Government's interest in detaining him without first providing

14  a due process hearing is low.  (ECF No. 2 at 21.)  The Court agrees.  As stated above, Petitioner's

15  arrest is evidence of his compliance because it occurred during a routine check-in.  (*Id.* at 10.)

16  Therefore, on these facts, the Court cannot find any legitimate interest for Respondents to detain

17  Petitioner.

18       Additionally, the cost and time of procedural safeguards are minimal here.  As Petitioner

19  correctly notes (*id.* at 23), notice and custody determination hearings are routine processes for

20  Respondents.  Any delay in detention (if justified) for the time to provide notice and a hearing

21  would be minimal.  Moreover, it would be less of a fiscal and administrative burden for the

22  Government to return Petitioner home to await a determination on his asylum application than to

23  continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D.

24  Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of

25  immigration detention are staggering.").

26       The Court finds that, under these circumstances, Respondents are required to provide

27  notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the

28  Constitution requires some kind of a hearing *before* the State deprives a person of liberty or

8

1  property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court

2  describes post-deprivation remedies as the "special case" where those are "the only remedies the

3  State could be expected to provide."  *Id.* at 129.  Here — where Petitioner has substantially

4  complied with the conditions of his release and has no criminal history — the Court finds pre-

5  deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of

6  liberty.

7      On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to

8  pre-deprivation notice and hearing to determine whether detention was warranted.  Respondents

9  did not provide either.  Moreover, Petitioner asserts that Respondents have not provided any post-

10  deprivation process.  Accordingly, with respect to his procedural due process claim, Petitioner has

11  shown he is likely to succeed on the merits.

12          B.    Irreparable Harm

13      Petitioner has also established he will suffer irreparable harm in the absence of a TRO.  "It

14  is well established that the deprivation of constitutional rights 'unquestionably constitutes

15  irreparable injury."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v.*

16  *Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is

17  involved, most courts hold that no further showing of irreparable injury is necessary."

18  *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting 11A Charles Alan

19  Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2948.1 (2d ed.

20  2004)).  Finally, "unlawful detention certainly constitutes extreme or very serious damage, and

21  that damage is not compensable in damages."  *Hernandez*, 872 F.3d at 999 (internal quotations

22  omitted).  Petitioner reiterates the foregoing in his motion, but also asserts that as a result of his

23  detention, he is unable to care for or financially support his wife, newborn son, and young

24  daughter.  (ECF No. 2 at 26.)  Petitioner further reports experiencing cold and restrictive

25  conditions, difficulty sleeping, negative health effects from the food, and significant emotional

26  distress.  (*Id*)  And, as stated above, Petitioner has stated colorable due process claims based on

27  his current detention.  Thus, Petitioner sufficiently establishes irreparable harm.

28  ///

C.     Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Petitioner asserts the balance of equities undoubtedly favors him, as any burden imposed on Respondents to release Petitioner and refrain from rearrest unless and until he is provided a hearing is both de minimis and clearly outweighed by the substantial harm Petitioner will suffer if he is detained.  (ECF No. 2 at 26.)  The Court agrees.  In sum, Petitioner establishes the balance of equities tips in his favor and an injunction is in the public interest.

Accordingly, the Court GRANTS Petitioner's request for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.     CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is GRANTED;

2. Respondents must IMMEDIATELY RELEASE Petitioner S.L. from custody.
   Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing;

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining

1    Petitioner absent compliance with constitutional protections, including seven-days' notice
2    and a pre-deprivation hearing before a neutral fact-finder where Respondents show:
3    (a) material changed circumstances demonstrate a significant likelihood of Petitioner's
4    removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and
5    convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the
6    community or a flight risk.  At any such hearing, Petitioner shall be allowed to have
7    counsel present;

8    4.  Respondents are ENJOINED from keeping Petitioner's documents and possessions,
9    including passport, driver's license, EAD, mobile phone, and any other items belonging to
10    Petitioner.  In order to return him to status quo prior to Respondents' detention, those
11    items are to be returned to Petitioner;

12    5.  Respondents are ORDERED TO SHOW CAUSE why the Petition for Writ of Habeas
13    Corpus (ECF No. 1) should not be granted.  Respondents shall file responsive papers by
14    **January 29, 2026**.  Petitioner may file a reply, if any, by **February 3, 2026**.  **The parties**
15    **shall indicate in their briefing whether they waive a hearing**.  Fed. R. Civ. P. 65(b)(3).
16    The Court will consider any stipulation and proposed order filed by the parties if they
17    agree to a less demanding briefing schedule;

18    6.  Petitioner is ORDERED to immediately serve this Order and all documents filed in this
19    case to date on Respondents, including a copy via email to: usacae.ecf2241-
20    imm@usdoj.gov.  **Petitioner shall file a proof of such service by 10:00 a.m. on**
21    **January 23, 2026**;

22    7.  Respondents are hereby notified of their right to apply to the Court for modification or
23    dissolution of the TRO on two days' notice to Petitioner.  Fed. R. Civ. P. 65(b)(4);

24    8.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts
25    regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015
26    (9th Cir. 2011); and

27    9.  The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name
28    and last initials.

11

1         IT IS SO ORDERED.

2    Date: January 22, 2026

3

4

5    TROY L. NUNLEY
6    CHIEF UNITED STATES DISTRICT JUDGE