UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| S.L., | | No. 1:26-cv-00522-TLN-EFB |
| | Petitioner, | |
| v. | | **ORDER** |
| MINGA WOFFORD, et al., | | |
| | Respondents. | |

This matter is before the Court on Petitioner S.L.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) For the reasons set forth below, the Court GRANTS Petitioner's Petition.

///
///
///
///
///
///
///
///

1

## I. Factual and Procedural Background

The Court need not set forth the background facts of this case as they are set forth fully in the Court's prior Order. (ECF No. 8.) On January 22, 2026, the Court granted Petitioner's Motion for a Temporary Restraining Order ("TRO") and ordered Respondents to show cause why the Petition should not be granted. (*Id.*) On January 28, 2026, Respondents filed a response to the order to show cause. (ECF No. 10.) On February 1, 2026, Petitioner filed a reply. (ECF No. 11.) The Court therefore considers the Petition on its merits.

## II. Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. Analysis

In his Petition for Writ of Habeas Corpus, Petitioner claims he is being unlawfully subjected to mandatory detention in violation of his Fifth Amendment substantive and procedural due process rights. (*See* ECF No. 1.) In response, Respondents filed a very brief opposition that does not address Petitioner's substantive and due process claims.[1] (ECF No. 10 at 1.) Instead,

---

[1] Respondents also argue a stay of this case pending the Ninth Circuit's decision in *Rodriguez v. Bostock*, No. 25-6842 is prudent, as the Court has awarded Petitioner the sought relief. (ECF No. 10 at 1.) In reply, Petitioner contends undue delays in a habeas matter are not authorized by statute and holding the entire decision in abeyance would be contrary to current law and frustrate the purpose of the motion for TRO. (ECF No. 11 at 7–8 .) The Court denies the request to stay. As discussed below, the Court finds Respondents have violated Petitioner's

2

1  Respondents state that Petitioner is properly detained in accordance with 8 U.S.C. § 1225(b)(2)
2  and the detention is lawful under the Constitution and applicable provisions of the Immigration
3  and Nationality Act ("INA").[2] (ECF No. 10 at 1.) The Court discusses each of Petitioner's
4  claims in turn.

### A.   Violation of Substantive Due Process

The Fifth Amendment Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Id.* at 690. However, "in certain special and narrow nonpunitive circumstances," nonpunitive government detention does not violate the Clause "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (cleaned up) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)). "In the context of civil immigration detention, the two 'regulatory goals' of the [INA] provisions governing such detention — 'ensuring the appearance of [noncitizens] at future immigration proceedings' and 'preventing danger to the community' — can provide such 'special justification.'" *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 939 (N.D. Cal. 2025) (citing

---

constitutional rights and the Court will not delay injunctive relief on the prospective chance a pending appeal could change this outcome.

[2] In reply, Petitioner asserts he is not an applicant for admission under § 1225(b) because that statute does not apply to individuals who have been in the country for a period of time, and he has been living in the United States since January 2025, when Respondents released him on his recognizance. (ECF No. 11 at 3.) Petitioner does not assert an INA claim, but the Court notes that this Court and other courts have examined § 1225(b) and concluded that it applies only to noncitizens "seeking admission," a category that does not include noncitizens like Petitioner, living in the interior of the country. *See, e.g.*, *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *2 (E.D. Cal. Dec. 11, 2025); *Hortua v. Chestnut*, No. 1:25-CV-01670-TLN-JDP, 2025 WL 3525916, at *3 (E.D. Cal. Dec. 9, 2025); *F.V.A.V. v. Wofford, et al.*, No. 1:25-cv-01763-TLN-JDP, ECF No. 16 (E.D. Cal. Dec. 19, 2025); *cf. F.S.S.M. v. Wofford*, No. 1:25-CV-01518-TLN-AC, 2025 WL 3526671, at *3 (E.D. Cal. Dec. 9, 2025). Without new facts, reasoning, or a higher court order finding otherwise, this Court will not reconsider its position from prior rulings.

*Zadvydas*, 533 U.S. at 690; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025)). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Id.* (quoting *Hernandez v. Sessions*, 872 F.3d 976, 990, 994 (2017)).

Here, the Court has already found persuasive Petitioner's argument that his detention is not justified by a legitimate purpose, as he is neither a danger nor a flight risk, which is evidenced by Respondents previously releasing him from custody in January 2025. (ECF No. 2 at 13; ECF No. 8 at 5.) With respect to whether Petitioner is a danger to the community, Petitioner states he has no criminal history and has had no intervening criminal history or arrests since his release. (ECF No. 2 at 13–14.) With respect to whether Petitioner is a flight risk, Petitioner asserts he has promptly communicated with his officer, U.S. Immigration and Customs Enforcement ("ICE"), and the Intensive Supervision Appearance Program ("ISAP"). (*Id.* at 14.) Petitioner notes he was arrested while actively appearing at his scheduled ICE appointment. (*Id.*) Further, the Court has already found persuasive Petitioner's argument that there is further mitigation of flight risk because he has a viable path toward immigration relief through his asylum and withholding of removal applications. (*Id.*; ECF No. 8 at 5); *cf. Padilla v. U.S. Immigr. and Customs Enf't*, 704 F. Supp. 3d 1163, 1173 (W.D. Wash. 2023) (finding there is no public safety concern or flight risk for plaintiffs with "bona fide asylum claims and who desire to remain in the United States"). Respondents have not provided any substantive opposition to the contrary. (*See* ECF No. 10.) The Court accordingly finds Respondents violated Petitioner's substantive due process rights.

### B. Violation of Procedural Due Process

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez*, 872 F.3d at 990. The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i. Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, the Court has agreed with Petitioner that he gained a liberty interest in his continued freedom after the Department of Homeland Security ("DHS") released him on parole in January 2025. (ECF No. 2 at 17; ECF No. 8 at 6.) Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his

continued freedom as he awaits the outcome of his asylum proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Respondents violated Petitioner's due process rights.

First, Petitioner has a substantial private interest in remaining free from detention. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner asserts that what is at stake for him is "one of the most profound individual interests recognized by our legal system: whether ICE may unilaterally nullify a prior decision releasing a non-citizen from custody and be able to take away his physical freedom, i.e., his 'constitutionally protected interest in avoiding physical restraint.'" (ECF No. 2 at 20 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Petitioner asserts he did not receive notice or a hearing before a neutral decisionmaker prior to his re-detention. (ECF No. 2 at 10, 21, 23–24); *see also Manzanarez*, 2025 WL 3247258, at *4 (quoting *A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of

6

liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.")).  Thus, the Court finds Petitioner was likely erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).

Additionally, the cost and time of procedural safeguards are minimal here.  As Petitioner correctly notes (ECF No. 2 at 23), notice and custody determination hearings are routine processes for Respondents.  Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal.  Moreover, it would be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his asylum application than to continue to detain him.  (*Id.*); *see also Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds that, under these circumstances, Respondents are required to provide notice and a pre-deprivation hearing.  The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide."  *Id.* at 129.  Here — where Petitioner has substantially

complied with the conditions of his release and has no criminal history — the Court finds pre-deprivation notice and a hearing are possible and valuable to preventing erroneous deprivation of liberty. Further, Respondents have not provided any substantive opposition to the contrary. (*See* ECF No. 10.).

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to pre-deprivation notice and hearing to determine whether detention was warranted. Respondents did not provide either. Moreover, Respondents did not provide a post-deprivation opportunity to be heard. The Court accordingly finds Respondents violated Petitioner's procedural due process rights.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondents demonstrate by clear and convincing evidence before a neutral decisionmaker that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: February 5, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE